E-FILED
Friday, 14 June, 2019 12:16:17 PM
Clerk, U.S. District Court, ILCD
FILED

AO 91 (Rev. 11/11)  Criminal Complaint

## UNITED STATES DISTRICT COURT

for the

Central District of Illinois

JUN 1 4 2019

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Rickey Rapp, Taryn Lee, and Daniel Huddleston | ) ) ) ) ) | Case No. 19 - mJ - 6071 |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____June 12, 2019_____ in the county of _____Peoria_____ in the
_____Central_____ District of _____Illinois_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A) | Defendants knowingly conspired together, and with others, to manufacture, distribute, and possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, and in furtherance of that conspiracy did manufacture, distribute, and possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of meth. |

This criminal complaint is based on these facts:

See attached Affidavit

☐ Continued on the attached sheet.

s/Justin Fitzgerald

_____
*Complainant's signature*

Justin Fitzgerald, Deputized Narcotics Officer, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

s/Jonathan E Hawley

Date: _____06/14/2019_____

_____
*Judge's signature*

City and state: _____Peoria, Illinois_____

Jonathan E. Hawley, Magistrate
*Printed name and title*

## AFFIDAVIT

I, Justin Fitzgerald, having been duly sworn, state:

1.      I am a narcotics enforcement detective with the Pekin Police Department and have been deputized by the Drug Enforcement Administration (DEA) through the Special Strategic Methamphetamine Initiative and have been so assigned since May of 2019.  I am presently assigned to the DEA Springfield, Illinois, Resident Office.  I am also a Detective of the Pekin, Illinois Police Department (PPD) and have been so employed since July of 2006.  I have personally conducted and/or assisted in approximately 500 investigations of individuals and organizations deriving income from the unlawful distribution of controlled substances.  I have had hundreds of conversations with drug traffickers concerning their methods of operation in the course of investigative interviews and covert activities.  I have also participated in the execution of over 100 search warrants relating to illegal drug trafficking.  I have participated in numerous investigations involving drug interdiction traffic stops.  In addition, I have participated in numerous investigations involving consensually-recorded calls and in-person overhears, which resulted in the arrest and conviction of narcotics dealers.  Further, I have reviewed thousands of communications sent and received by narcotics distributors as obtained via court ordered cellular

1

records and/or digital media platforms.  In the course of drug investigations, I have listened to numerous covertly recorded conversations between drug dealers/traffickers revealing their methods of operation.

## RELEVANT STATUTES

2.      Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846 prohibit someone from knowingly conspiring with another, to manufacture, distribute, and possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; and prohibit someone, in furtherance of that conspiracy, from manufacturing, distributing, and possessing with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine.

3.      I am familiar with the following facts based on my personal observations as well as information provided to me by other law enforcement agents.  Because I am making this affidavit to establish probable cause in support of the criminal complaint, I have not set forth each and every fact known to me and the other agents and officers concerning the investigation. I have set forth only the facts that I believe are necessary to establish probable cause that Rickey E. Rapp (RAPP), Taryn N. Lee (LEE), and Daniel S. Huddleston

(HUDDLESTON) have each committed violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846.

## PROBABLE CAUSE

4.      On May 24, 2019, HUDDLESTON was arrested in Pekin, IL. and found to be in possession of approximately 30 grams of methamphetamine. HUDDLESTON was interviewed after his arrest and admitted to detectives that he actively sells methamphetamine for RAPP.  From this, he was aware that RAPP's source of supply for methamphetamine was located in Burlington, Iowa. HUDDLESTON admitted that on at least one prior occasion he had driven to Burlington with RAPP in two separate vehicles where RAPP purchased four pounds of methamphetamine and brought it back to Central Illinois for distribution.  HUDDLESTON consented to a forensic download of his cell phone, which was completed.  HUDDLESTON identified the number in his phone of (309)412-6265 as belonging to RAPP.  The contact in HUDDLESTON's phone attached to this number was "Bobby Rikki".  HUDDLESTON was released from custody without charge due to his intentions to cooperate with the investigation and cooperate with law enforcement.  HUDDLESTON discontinued all correspondence with law enforcement in the days following his arrest.

5.      Prior to June 12, 2019, as part of this ongoing investigation, investigators obtained a warrant to administer GPS tracking on a 2005 Ford Explorer with Illinois registration number AA56484 belonging to Michelle Son of Pekin, IL.  Son is a known methamphetamine user and known associate of HUDDLESTON.

6.      On June 12, 2019, the GPS tracker showed the vehicle traveled to HUDDLESTON's address, which was verified by officer surveillance. Next, the tracker showed the vehicle traveled to multiple locations in Pekin prior to leaving for Burlington.  The addresses visited on June 12th were consistent with addresses that the vehicle visited during a previous GPS tracked trip to Burlington in May 2019. Officers also obtained video surveillance from a local Pekin gas station that showed HUDDLESTON was the driver of the vehicle at approximately 5:04 pm on June 12, 2019.

7.      While the car was traveling to Burlington, Detective Beecher with the PPD applied for, and received, a warrant to search and seize the vehicle. The tracker showed the vehicle traveled to Burlington.  Detectives set up surveillance around the Farmington, IL area along Illinois Rt. 116 - the same route the vehicle took to Burlington.  There was minimal traffic on the roadway.  I sat along the roadway for approximately forty minutes and observed very few vehicles

4

traveling along Rt. 116. As the tracker approached my location, I observed two

vehicles traveling in close proximity to one another. The first vehicle was the

Ford Explorer with the tracker attached to it. HUDDLESTON was positively

identified as the driver of the Ford Explorer.

8.      The second vehicle was a 2008 Silver Dodge Grand Caravan with

Illinois Temporary registration of 672U866 following the Ford Explorer. The

Grand Caravan was following the Explorer by only 1-2 car lengths. I observed

there were multiple occupants in the Grand Caravan. The plate on the Grand

Caravan was registered to Cindy Price of Peoria, IL and was purchased in Pekin,

IL.

9.      Given the location in Farmington, IL, on Rt. 116 between Burlington,

IA and Peoria/Pekin, IL, where the vehicles were observed, time of night being

approximately 11:03 p.m., the close proximity of the two vehicles as they

traveled, the registration information of both vehicles being associated to Pekin,

IL, and the previous information about HUDDLESTON making the trips to

Burlington, IA in tandem with a second vehicle, officers were reasonably

suspicious that the Grand Caravan was traveling in tandem with

HUDDLESTON from Burlington, IA with methamphetamine. Based upon my

training and experience I am aware that use of a secondary or trail vehicle when

5

transporting illegal narcotics is a tactic employed to avoid detection from law enforcement. This tactic is designed to both spot law enforcement in order to alert the transport vehicle and to run interference with law enforcement to prevent the transport vehicle from being stopped. Detectives followed both vehicles as they maintained the same rout of travel together from Farmington, IL to Peoria, IL.

10.     Officers conducted traffic stops on both vehicles on Harmon Highway just east of Laramie St. in West Peoria, IL. HUDDLESTON was the driver and sole occupant of the Ford Explorer. A search of the Ford Explorer produced three packages of methamphetamine and a loaded handgun from the front passenger seat area of the vehicle. The methamphetamine field-tested positive for methamphetamine and weighed at 3.2 pounds with packaging, or approximately 1449 grams. The handgun was Smith and Wesson 9mm-semiautomatic handgun, model number SW9VE, and serial number DWN6914. The handgun was loaded with four rounds of ammunition, one round in the chamber of the handgun.

11.     The driver of the Grand Caravan was identified as Cindy Price (RAPP's mother). RAPP was the front seat passenger in the Grand Caravan. The back seat driver's side passenger in the Grand Caravan was identified as LEE. A

6

Peoria County K-9 Unit conducted a free air sniff of the Grand Caravan and advised that the K-9 alerted to the odor of illegal narcotics. The Grand Caravan was searched. A vape style methamphetamine pipe was located in the front passenger seat area where RAPP had been sitting. The vape style pipe contained a detectable amount of methamphetamine that field tested positive for methamphetamine. Two separate cell phones were located sitting on LEE's seat and RAPP's seat in the vehicle respectively. The cell phone sitting on LEE's seat received numerous messages while detectives were on scene searching the vehicle. Based on my training and experience, the messages appeared related to narcotics sales. Both cell phones and the methamphetamine pipe were seized as evidence of the investigation.

12.    HUDDLESTON was taken into custody and made post Miranda statements. HUDDLESTON stated that when police stopped him he was traveling back from Burlington with RAPP and LEE and transporting methamphetamine. HUDDLESTON stated that RAPP and LEE were following him in a different vehicle because he (HUDDLESTON) was transporting the methamphetamine. HUDDLESTON said that he did not know exactly how much methamphetamine he was transporting, but that when they were in Burlington RAPP put the bag that contained the methamphetamine in to the Ford Explorer. Huddleston said that RAPP previously told him that LEE

7

contributed $7,000.00 to the purchase of methamphetamine and RAPP had contributed $10,000.00-$12,000.00 to the purchase of methamphetamine. HUDDLESTON claimed he had no knowledge of the handgun that was in the bag with the methamphetamine. HUDDLESTON said that he agreed to transport the methamphetamine because he owed RAPP approximately $2,000.00 for a previous drug debt. Huddleston admitted that this trip was the fourth or fifth trip he has made to Burlington with RAPP to pick up methamphetamine.

13.    RAPP was taken into custody and made post Miranda statements. RAPP said his mother had driven him to a city in Iowa to look at a vehicle for sale. He said that they randomly ran into HUDDLESTON at a Casey's Gas Station while traveling back from Iowa in Roseville, IL and after that they began following HUDDLESTON. RAPP admitted that he uses methamphemtaine.

14.    RAPP's mother, Cindy Price (Price) was interviewed and stated that she took RAPP to Burlington, IA to pick up LEE. Price said that she took RAPP to a location, possibly on Elm St., where RAPP went into a house for twenty minutes and came out with LEE. Price said that while they were at a gas station in Roseville, IL RAPP pointed out HUDDLESTON's vehicle and told her to follow it. It should be noted the tracker device did show a stop at a Casey's gas station in Roseville on the return trip from Burlington.

15.    LEE was taken into custody and made post Miranda statements. LEE said that she traveled with RAPP to Burlington, IA because she did not have a job and had nothing better to do.  She denied any knowledge that HUDDLESTON was traveling in a vehicle in front of them coming back from Burlington.

16.    During the month of June, as part of this ongoing investigation, narcotics detectives have conducted two controlled purchases of methamphetamine directly from LEE. One of the two purchases was utilizing a confidential informant. During the other controlled purchase an undercover narcotics officer purchased methamphetamine directly from LEE. During each of those controlled purchases LEE accepted money and distributed a substance, that later field-tested positive for methamphetamine.

## CONCLUSION

17.    I respectfully submit this affidavit as probable cause to believe Rickey E. Rapp, Taryn N. Lee, and Daniel S. Huddleston have knowingly conspired with each other, and others, to manufacture, distribute, and possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; and that they, in furtherance of that conspiracy, did manufacture,

distribute, and possess with the intent to distribute 500 grams or more of a

mixture and substance containing a detectable amount of methamphetamine, in

violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846.


THERE ARE NO FURTHER STATEMENTS.

s/Justin Fitzgerald


Justin Fitzgerald
Deputized Narcotics Enforcement Officer
Drug Enforcement Administration


Subscribed and sworn to before me on this 14th day of June 2019.


s/Jonathan E Hawley


Jonathan E. Hawley,
United States Magistrate Judge


10